## M. T. Cox *et al. v.* R. W. Scott *et al.*

1. MARRIED WOMAN. *Separate property. Insurance collected and reinvested. Husband's consent. Reduction into possession.* A married woman collected the insurance on a house which she had owned, and invested it again in real estate, her husband assenting to her control and disposition of the fund: *Held,* that the money so collected was not so reduced into the possession of the husband that the equity of the wife was defeated.

2. SAME. *Chose in action. Reduction into possession.* A chose in action of a married woman, though it accrues during coverture, does not become the property of the husband unless reduced into his possession.

3. SAME. *Wife's earnings. Reduction into possession.* Personal property, though purchased with the earnings of a married woman, is subject to the husband's debts, though he did not reduce the money to possession, where there is no separate estate.

   Cases cited: Wade *v.* Cantrell, 1 Head, 346; Hollingsworth *v.* Miller, 5 Sneed, 472.

4. SEMBLE, that a wife is a competent witness in her own behalf, though her husband be a necessary party to the same case with her.

---

FROM GIBSON.

---

Appeal from the Humboldt Chancery Court. JOHN SOMERS, Chancellor.

McFARLAND & BOBBIT and SPL. HILL for plaintiffs.

H. T. JOHNSON for defendants.

McFARLAND, J., delivered the opinion of the court.

The complainants are the creditors of R. W. Scott, and under this bill have attached a house and lot in the town of Milan, claimed by Mrs. S. E. Scott, wife of said R. W. Scott, and certain furniture therein, for the satisfaction of their debts. The bill charges that the house and lot was sold at a chancery sale and bid off in the name of Mrs. Scott, at the price of $2,700—$540 of which was paid in cash, and a note given for the balance by Calvin H. Ferrell. That the $540 paid was the money of R. W. Scott, and that Scott paid into the hands of Ferrell $2,160, with the agreement that Ferrell was to give his note to the clerk and master for the amount, being the balance of the bill over the cash payment; so that the entire purchase price of the property was paid as the money of R. W. Scott, and that this was a fraudulent device to vest the title of the property in the wife to hinder and delay creditors—the husband being at the time indebted largely, and insolvent. The answers admit the purchase of the property and the vesting the title in Mrs. Scott, but deny that any part of the money paid belonged to R. W. Scott. They say that Mrs. Scott paid $540 in hand, and gave her note, with C. H. Ferrell and her husband as sureties for the balance of $2,160. This note was afterwards taken up and the note of Ferrell, with R. W. & Mrs. Scott as sureties, substituted. That Mrs. Scott had previously loaned to Ferrell $2,173.25, and that after she purchased the lot, Ferrell, at her request

substituted his note to the master for her's for $2,160, in satisfaction to that extent of the money he owed Mrs. Scott. The answers deny that any part of the $540 paid in hand, or of the money loaned Ferrell, belonged to R. W. Scott; that no part of it was ever in his possession, except under the directions of Mrs. Scott, and then only for the purpose of paying it out. Mrs. Scott gives in her answer the following account of the sources from whence she derived the sums of money above referred to: Several years previous, her father-in-law, W. D. Scott, made her a deed to a house and lot in Humboldt; that she had the house insured, and it having been destroyed by fire, the insurance company paid her $1,250; that after the house was burned she sold the lot for $800, and of her own earnings she had saved $240. She had used some little of the money after the financial reverses of her husband, and loaned the remainder, $2,173.75, to C. H. Ferrell, and when she made the purchase of the house and lot in controversy, she borrowed of her father-in-law, W. D. Scott, $1,200 to assist her in paying for the property and purchasing such furniture for the house as was necessary.

One of the questions argued before us is, "as to the competency of R. W. & Mrs. Scott as witnesses." Under our decisions, it is clear the husband is not a competent witness for the wife. It seems to us to be a hard rule, to hold that the wife cannot be a witness for herself, because the husband must necessarily be a party to the cause, and has a legal interest in the result, while under our statutes the other parties may

be witnesses. Whether there should be a modification of the holdings of this court upon the question, we for the present pass over, as in our view the result would be the same in either event.

It is argued upon behalf of the complainants, that excluding the testimony of Mrs. Scott and her husband there is no evidence to sustain the statements of the answer in regard to the money used in paying for the property; but in our view the *onus* is upon the complainants to overthrow the title of Mrs. Scott and show affirmatively that the property was paid for with the money of the husband; and although the testimony of Shane and Harris raises a strong suspicion that other money of the husband might have been used, yet it is not sufficient to establish the fact. So that if the testimony of both Scott and wife is excluded, there is not sufficient testimony to overthrow the statements of the answer. We merely add, that the discrepancies between the depositions of Scott and wife, and between these depositions and their answer, tend rather to weaken than to strengthen the cause of the defendant. We will take it, then, that the statements of the answer as to the manner in which the property was paid for, and the sources from which the money was derived, are true—except that it is perhaps shown that she did not receive the use, or all of the money for which she sold her joint lot in paying for the property in question, one of the notes being otherwise used. We will assume that Mrs. Scott had in her possession $540, and that she sent this by her husband to make the cash payment; that she also had in her

possession $2,160, or more, which she had previously loaned to Ferrell, and in settlement of this Ferrell gave his note to the clerk and master for the deferred payment; that $1,250 of the money was the insurance money on Mrs. Scott's house in Humboldt, $240 her own earnings, and the balance was borrowed from her father-in-law to finish paying for the property and to purchase furniture, and that R. W. Scott never had any of the money in his possession except under the directions of Mrs. Scott. The question upon these facts is, whether any part of this money was in law the money of R. W. Scott. There certainly can be no reasonable doubt that the furniture attached was in law the property of the husband, although paid for with the money above referred to. Personal property in possession—and the possession of the wife in such cases is the possession of the husband—is in law the property of the husband, nothing else appearing to show a separate property of the wife. *Wade* v. *Cantrell*, 1 Head, 346; *Hollingsworth* v. *Miller*, 5 Sneed, 472. No objection was made as to the manner of reaching this property, and we think the creditors are entitled to appropriate the same, and may have a decree upon the replevin or delivery bond executed in this case.

But the question is, as to the real estate. The burning of Mrs. Scott's house in Humboldt converted to that extent her real into personal estate, in the form of a chose in action due her from the insurance company. There are authorities to the effect that a chose in action accruing to the wife *during* coverture,

becomes the absolute property of the husband without a reduction to possession; but according to the English cases, which seems to us to be the more reasonable, there is in this respect no distinction between a chose in action accruing to the wife during coverture, and choses due her before marriage; in either case, the right of the husband depends upon a reduction to possession. The marital right of the husband then attached to this chose in action, and it would become his upon a reduction to possession; but before a reduction to possession the equity of the wife therein to a reasonable possession would be superior to the rights of creditors. The question then is, what is such a reduction to possession by the husband? Upon this question the authorities are not to be reconciled. We have in this case a payment of the money due on the chose of the wife to *the wife herself*, without more, and that money retained in her possession until it is loaned out by her, and used in paying for the property purchased, without any affirmative action by the husband, except that he aids and assists the wife in paying out the money in the purchase of the property in her name, and in this way clearly assenting to her use of the money. The general principle of the common law is, that marriage amounts to an absolute gift to the husband of all personal goods of which the wife is actually or beneficially possessed at the time, *or which comes to her during the coverture.* Story E. J., sec. 1402; *Wade* v. *Cantrell*, 1 Head, 346. So that, if she have money in her pocket, or personal property in the hands of a third party, the title vests

at once in the husband without more, and it is not necessary that he take actual possession to complete his title. Bishop on the law of Married Women, sec. 66, *et seq.* If it be a chose in action of the wife requiring an action at law, he must reduce it to possession; but the possession of the wife is for some purposes at least, the possession of the husband, and a payment to the wife will, in general, where nothing else appears, be a payment to the husband and a reduction to possession. Bishop M. W., sec. 115. In fact it is in general held that the wife cannot receive payment except as the agent of the husband. That a payment to the wife, where nothing else appears, vests the money in the husband, results from the general principle above stated, that marriage amounts to an absolute gift to the husband of all the personal goods of the wife capable of actual possession, which she has at the time *or which comes to her during the coverture,* without any actual or manual possession by the husband. For money paid to the wife during coverture upon a chose of hers, would stand like money in her hands at the time of the marriage, and if the title of the husband vests in the one case without actual possession by him, so it must in general in the other. But this rule, according to many authorities, is subject to this qualification: that is, that a reduction to possession by the husband himself, will not in all cases vest the money in him, to the exclusion of the wife's equity, for he may receive it as her trustee, upon a provision to invest or hold it for her. In such case, the wife's equity is not lost, and if such a payment

to the husband will not extinguish the wife's. equity, a like payment to the wife herself ought not to do so. Bishop M. W., sec. 116; sec. 119, *et seq.* The cases are conflicting—some holding that a mere receiving by the husband of the wife's property will not be such a reduction to possession as will affect the wife's equity, unless he receives it solely in the exercise of his marital right and for the purpose of its appropriation to his own use. Such, Mr. Bishop says, was the doctrine of a Vermont case, and such he thinks is the better view, although the decisions of the several States are conflicting.

We have in this State a large number of cases, where the funds of a married woman are received by the husband under a contract or promise upon his part to invest for the wife, and in such cases the wife's equity to follow the fund has always been recognized. These are cases of resulting trusts, but it is the settled doctrine in these cases that if the funds are received by the husband without any such promise or agreement at the time, the fund is absolutely vested in the husband and the wife's equity is gone. In the present case there is no express promise proved upon the part of the husband that the fund should be held for the benefit of the wife; but we have the fact that the money was paid to the wife, kept in her possession separate from any funds of the husband, loaned out again in the name of the wife, upon a note to her, and then her debtor assumes in discharge of his debt to her, to pay the balance of the purchase price

Cox *v.* Scott.

of the property in question, and to all this the husband not only assents, but actually assists in consummating. We think this shows that the husband assented all the time that the money should be thus used by the wife, and excludes the idea of any assertion of right or ownership upon his part, or any intention to convert the money to his own use, and we think it is in effect equivalent to a promise upon the part of the husband at the time the money was paid to the wife, that it should be held and invested for her use. If the husband receive the money under a promise to invest for the wife, equity will uphold the right of the wife. We do not see that the wife's equity should be any less when she has herself received the money and reimbursed it for herself, under circumstances which show clearly that the husband was all the time assenting that this should be done, and which clearly excludes the idea of any assertion of any right upon the part of the husband.

We admit that in general the possession of the wife is the possession of the husband; that the law does not enquire into or distinguish between the possession of the wife and the possession of the husband, but upon the peculiar facts of this case we think the wife's equities in this fund was not lost. The case of *Wade* v. *Cantrell,* 1 Head, was a contest over the title to a slave, and the court held the title in the husband, notwithstanding he had disclaimed any title in himself. In that character of case the wife could have no equity separate from the legal title. We

conclude that the wife's equity in this fund was not lost, and its investment in purchase of other property for her was no fraud upon the husband's creditors.

As to the $1,200 borrowed of W. D. Scott, it appears he held an unsatisfied mortgage on the property for the repayment of this sum, and he is not a party to this suit. We do not see that the creditors can predicate any claim upon this ground—certainly none superior to the claim of W. D. Scott. The $240, earnings of the wife, was in law the money of the husband, but it is not clear that any of this went into the land, part of the money was otherwise expended and some expended for the furniture.

The decree on the house and lot will be reversed, but as to the personal property, a decree may be had for the complainants on the replevin bond. The costs of this court will be adjudged against W. D. Scott.